**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW SPICIARICH; JOEL O'NEIL; and IAN ANDERSON, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **No: 20 Civ. 646 (FJS/CFH)** |
| **-against-** | |
| **THE GORMAN GROUP, LLC; GORMAN BROS., INC.; ALBERT MARK GORMAN, individually; and PAUL ANTHONY GORMAN, individually;** | **AMENDED COMPLAINT** |
| **Defendants.** | |

Andrew Spiciarich, Joel' O'Neil, Ian Anderson ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover overtime compensation, agreed upon wages, and other damages for Plaintiffs and similarly situated foremen, chippers, operators, and all similarly situated hourly workers (collectively "Hourly Workers") who work or have worked for The Gorman Group located at 200 Church Street, Albany, New York 12202.

2.      Owned and operated by The Gorman Group, LLC, Gorman Bros., Inc., Albert Mark Gorman, and Paul Anthony Gorman (collectively, "The Gorman Group" or "Defendants"), The Gorman Group provides asphalt road engineering to municipalities throughout the Northeast.

1

3.     Defendants organize their work force into "crews" of Hourly Workers who travel from their residences to a "shop" or meet up location to perform work preparing their machine and vehicles for the day. This includes loading and organizing equipment and materials onto vehicles.

4.     Hourly Workers then depart with their crew via company vehicle to their assigned job site, which is generally a 1.5 to 2-hour drive from their shop location.

5.     Upon finishing their work at their assigned job site, Hourly Workers head back to their shop location to reequip and organize vehicles in preparation for the next day.

6.     Despite these schedule hours, Defendants have instituted a policy and practice in which the hours Hourly Workers travel from the shop site the work site are not counted towards hours worked.

7.     Despite having knowledge that Hourly Worker regularly travel between these assigned work sites, Defendants do not pay Hourly Workers any compensation for this additional compensable time.

8.     Defendants at all times have compensated Plaintiffs and other Hourly Workers on an hourly rate basis.

9.     Despite being non-exempt employees, Defendants have failed to properly pay Plaintiffs and other Hourly Workers overtime compensation at 1.5 times their regular rate of pay when they work over 40 hours per workweek.  Specifically, Defendants failed to add together all compensable time, including time worked traveling between jobsites, for the purposes of overtime compensation.

10.    Furthermore, despite being manual workers, Defendants have failed to properly pay Plaintiffs and other Hourly Workers their wages within seven calendar days after the end of the week in which these wages were earned.

2

11.     In this regard, Defendants have failed to provide timely wages to Plaintiffs and all other similar Hourly Workers.

12.     Plaintiffs bring this action on behalf of themselves and all other similarly situated Hourly Workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b).

13.     Plaintiffs also bring this action on behalf of themselves and all other similarly situated Hourly Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiff**

**Andrew Spiciarich**

14.     Andrew Spiciarich ("Spiciarich") is an adult individual who is a resident of New York.

15.     Spiciarich has been employed by Defendants as an Hourly Worker since May 2014.

16.     Spiciarich is a covered employee within the meaning of the FLSA and the NYLL.

17.     A written consent form for Spiciarich is being filed with this Class Action Complaint.

**Joel O'Neil**

18.     Joel O'Neil ("O'Neil") is an adult individual who is a resident of New York.

19.     O'Neil was employed by Defendants as an Hourly Worker from approximately May 2001 through March 2019.

20.     O'Neil is a covered employee within the meaning of the FLSA and the NYLL.

3

21.     A written consent form for O'Neil is being filed with this Class Action Complaint.

**Ian Anderson**

22.     Ian Anderson ("Anderson") is an adult individual who is a resident of New York.

23.     Anderson was employed by Defendants as an Hourly Worker from approximately July 7, 2017 through October 1, 2019.

24.     Anderson is a covered employee within the meaning of the FLSA and the NYLL.

25.     A written consent form for Anderson is being filed with this Class Action Complaint.

**<u>Defendants</u>**

26.     Defendants jointly employed Plaintiffs and similarly situated employees at all times relevant.

27.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the NYLL.

**The Gorman Group, LLC**

29.     The Gorman Group, LLC is a domestic for-profit corporation organized and existing under the laws of New York.

30.     The Gorman Group, LLC is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

31.     At all times relevant, The Gorman Group, LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

32.     The Gorman Group, LLC applies the same employment policies, practices, and

procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

33.     Upon information and belief, at all relevant times, The Gorman Group, LLC has had an annual gross volume of sales in excess of $500,000.

**Gorman Bros., Inc.**

34.     Gorman Bros., Inc. is a domestic for-profit corporation organized and existing under the laws of New York.

35.     According to their filing on the New York Department of State's website, Gorman Bros., Inc.'s principal executive office is located at 200 Church Street, Albany, New York 12202.

36.     Gorman Bros., Inc. is the entity that appears on the paystubs received by Plaintiffs for work performed for Defendants.

37.     Gorman Bros., Inc. is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

38.     At all times relevant, Gorman Bros., Inc. has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

39.     Gorman Bros., Inc. applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

40.     Upon information and belief, at all relevant times, Gorman Bros., Inc. has had an annual gross volume of sales in excess of $500,000.

**Albert Mark Gorman**

41.     At all relevant times herein, Albert Mark Gorman ("Mark Gorman") has owned

and/or operated The Gorman Group, LLC and Gorman Bros., Inc.

42.     Upon information and belief, Mark Gorman is a resident of the State of New York.

43.     According to the New York Secretary of State – Division of Corporations, Mark Gorman is identified as the "Chief Executive Officer" for Gorman Bros., Inc.

44.     Mark Gorman maintains a direct and significant management role in The Gorman Group, LLC and Gorman Bros. Inc.

45.     According to media sources, Mark Gorman has been running The Gorman Group for over thirty years.[1]

46.     Mark Gorman has been recognized by the New York State Senate as a leader and owner of The Gorman Group.[2]

47.     Mark Gorman is mentioned on The Gorman Group's website as carrying on the legacy of the family owned business.[3]

48.     Mark Gorman maintains a direct and significant management role in The Gorman Group. In this regard, Spiciarich, O'Neil, and Anderson all identify Mark Gorman as a manager who frequently directs their work.

49.     At all relevant times, Mark Gorman has had the power over payroll decisions at The Gorman Group, including the power to retain time and/or wage records.

50.     At all relevant times, Mark Gorman has been actively involved in managing the day to day operations of The Gorman Group.

51.     At all relevant times, Mark Gorman has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at The Gorman Group.

---

[1] *See* https://www.constructionequipmentguide.com/the-gorman-group-one-hundred-years-and-counting/35941.
[2] *See* N.Y. Senate Resolution No. 488 (2017).
[3] *See* http://www.gormanroads.com.

52.     At all relevant times, Mark Gorman has had the power to transfer the assets and/or liabilities of the Gorman Group.

53.     At all relevant times, Mark Gorman has had the power the declare bankruptcy on behalf of the Gorman Group.

54.     At all relevant times, Mark Gorman has had the power to enter into contracts on behalf of the Gorman Group.

55.     At all relevant times, Mark Gorman has had the power to close, shut down, and/or sell the Gorman Group.

56.     Mark Gorman is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Paul Anthony Gorman**

57.     At all relevant times herein, Paul Anthony Gorman ("Tony Gorman") has owned and/or operated The Gorman Group, LLC and Gorman Bros., Inc.

58.     Upon information and belief, Tony Gorman is a resident of the State of New York.

59.     Tony Gorman maintains a direct and significant management role in The Gorman Group, LLC and Gorman Bros. Inc.

60.     According to media sources, Tony Gorman has been running The Gorman Group for over thirty years.[4]

61.     Tony Gorman has been recognized by the New York State Senate as a leader and owner of The Gorman Group.[5]

62.     Tony Gorman is mentioned on The Gorman Group's website as carrying on the

---

[4] *See* https://www.constructionequipmentguide.com/the-gorman-group-one-hundred-years-and-counting/35941.
[5] *See* N.Y. Senate Resolution No. 488 (2017).

legacy of the family owned business.[6]

63.     Tony Gorman maintains a direct and significant management role in The Gorman Group. In this regard, Spiciarich, O'Neil, and Anderson all identify Tony Gorman as a manager who frequently directs their work.

64.     At all relevant times, Tony Gorman has had the power over payroll decisions at The Gorman Group, including the power to retain time and/or wage records.

65.     At all relevant times, Tony Gorman has been actively involved in managing the day to day operations of The Gorman Group.

66.     At all relevant times, Tony Gorman has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at The Gorman Group.

67.     At all relevant times, Tony Gorman has had the power to transfer the assets and/or liabilities of the Gorman Group.

68.     At all relevant times, Tony Gorman has had the power the declare bankruptcy on behalf of the Gorman Group.

69.     At all relevant times, Tony Gorman has had the power to enter into contracts on behalf of the Gorman Group.

70.     At all relevant times, Tony Gorman has had the power to close, shut down, and/or sell the Gorman Group.

71.     Tony Gorman is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

---

[6] *See* http://www.gormanroads.com.

**JURISDICTION AND VENUE**

72.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

73.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

74.     Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants conduct business in this District.

**COLLECTIVE ACTION ALLEGATIONS**

75.     Plaintiffs bring the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly situated persons who work or have worked as Hourly Workers for The Gorman Group who elect to opt-in to this action (the "FLSA Collective").

76.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective.

77.     Consistent with Defendants' policies and patterns or practices, Plaintiffs and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

78.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

79.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to,

willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, proper premium overtime wages for all hours worked in excess of 40 hours per workweek.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring the Second, Third, Fourth, Fifth, and Sixth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as Hourly Workers for The Gorman Group in New York between June 9, 2014 and the date of final judgment in this matter (the "Rule 23 Class").

81.     The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

82.     There are more than fifty Rule 23 Class Members.

83.     Plaintiffs' claims are typical of those claims that could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

84.     Plaintiffs and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

85.     Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interests antagonistic to the Rule 23 Class Members.

86.     Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented many plaintiffs

and classes in wage and hour cases.

87.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

88.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class Members individually and include, but are not limited to, the following:

> (a) whether Defendants failed to compensate Plaintiffs and the Rule 23 Class for all hours worked at their regular rate(s) of pay;
>
> (b) whether Defendants correctly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 per workweek;
>
> (c) whether Defendants compensated Plaintiffs and the Rule 23 Class on a timely basis;
>
> (d) whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with proper time of hire wage notices, as required by the NYLL;
>
> (e) whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with accurate statements with every payment of wages, as required by the NYLL.

### PLAINTIFFS' FACTUAL ALLEGATIONS

89.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Andrew Spiciarich**

90.      Spiciarich has been employed by Defendants as a "Foreman" and "Chipper" from approximately May 2014 through the present date.

91.      At all times relevant, Defendant paid Spiciarich on an hourly basis.

92.      At all times relevant, Spiciarich has been a non-exempt employee under the FLSA and NYLL.

93.      During his employment, Spiciarich generally worked between 45 to 60 hours per week, unless he missed time for vacation, sick days or holidays. On average, he generally was assigned a schedule of 5 days per week.

94.      In general, Spiciarich would travel to his shop location and spend approximately 30 minutes fueling up a work vehicle and organizing equipment onto the vehicle. Spiciarich would then drive the vehicle to his assigned worksite. On average, Spiciarich drove between 1.5 to 2 hours to his assigned worksite.

95.      After completing his assigned duties at his worksite, Spiciarich would generally drive between 1.5 to 2 hours back to the shop location. Upon arriving at the shop Spiciarich would usually work 30 minutes to 1 hour loading up vehicles with raw paving materials for the next day of work.

96.      Defendants would pay Spiciarich for his time working in the shop at the beginning and end of the workday, and would pay Spiciarich for his time working at his assigned jobsite. Therefore, Defendants were aware that Spiciarich was traveling between the shop and his assigned worksite, however Defendants did not account for this travel time when compensating Spiciarich.

97.      Despite regularly working over 40 hours per workweek, Defendants failed to correctly compensate Spiciarich with proper overtime compensation of 1.5 times his regular rate

of pay for all hours he was suffered or permitted to work.

98.     Defendants did not compensate Spiciarich for time he spent traveling between the shop and his assigned worksites.

99.     During his employment, over twenty-five percent of Spiciarich's duties were physical tasks, including but not limited to: (1) shoveling to fill holes and spread stone; (2) sweeping; (3) replacing parts and maintaining equipment; (4) carrying and lifting fiber rolls of up to fifty pounds; and (5) standing for long periods of time.

100.    Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Spiciarich was not compensated with all the wages he earned within seven calendar days after the end of the week in which his wages were earned.

101.    Upon information and belief, Defendants did not provide Spiciarich with a time of hire notice as required by the NYLL.

102.    Throughout his employment, Spiciarich received weekly pay stubs from Defendants that did not properly record and/or compensate him for all of the hours that he worked.

103.    In this regard, Defendants failed to provide Spiciarich with accurate wage statements as required by the NYLL.

**Joel O'Neil**

104.    O'Neil was been employed by Defendants as a "Foreman" and "Operator" from approximately May 2001 through March 2019.

105.    At all times relevant, Defendant paid O'Neil on an hourly basis.

106.    At all times relevant, O'Neil has been a non-exempt employee under the FLSA and NYLL.

107.    During his employment, O'Neil generally worked between 50 to 60 hours per week,

unless he missed time for vacation, sick days or holidays. On average, he generally was assigned a schedule of 5 days per week.

108.    In general, O'Neil would travel to his shop location and spend approximately 1 hour fueling up a work vehicle and organizing equipment onto the vehicle. O'Neil would then drive the vehicle to his assigned worksite. On average, O'Neil drove 2 hours to his assigned worksite.

109.    After completing his assigned duties at his worksite, O'Neil would generally drive 2 hours back to the shop location. Upon arriving at the shop O'Neil would usually work 30 minutes to 1 hour loading up vehicles with fiberglass for the next day of work.

110.    Defendants would pay O'Neil for his time working in the shop at the beginning and end of the workday, and would pay O'Neil for his time working at his assigned jobsite. Therefore, Defendants were aware that O'Neil was traveling between the shop and his assigned worksite, however, Defendants did not account for this traveling time when compensating O'Neil.

111.    Despite regularly working over 40 hours per workweek, Defendants failed to correctly compensate O'Neil with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work.

112.    Defendants did not compensate O'Neil for time the spent traveling between the shop and his assigned worksites.

113.    During his employment, over twenty-five percent of O'Neil's duties were physical tasks, including but not limited to: (1) shoveling to fill holes and spread stone; (2) sweeping; (3) replacing parts and maintaining equipment; (4) carrying and lifting fiber rolls of up to fifty pounds; and (5) standing for long periods of time.

114.    Despite regularly spending more than twenty-five percent of his shift performing

these physical tasks, O'Neil was not compensated with all the wages he earned within seven calendar days after the end of the week in which his wages were earned.

115.    Throughout his employment, O'Neil received weekly pay stubs from Defendants that did not properly record and/or compensate him for all of the hours that he worked.

116.    In this regard, Defendants failed to provide O'Neil with accurate wage statements as required by the NYLL.

**Ian Anderson**

117.    Anderson was been employed by Defendants as an "Operator" from approximately July 2017 through October 2019.

118.    At all times relevant, Defendant paid Anderson on an hourly basis.

119.    At all times relevant, Anderson has been a non-exempt employee under the FLSA and NYLL.

120.    During his employment, Anderson generally worked between 45 to 60 hours per week, unless he missed time for vacation, sick days or holidays. On average, he generally was assigned a schedule of 5 days per week.

121.    In general, Anderson would travel to his shop location and spend approximately 30 minutes fueling up a work vehicle and organizing equipment onto the vehicle. Anderson would then drive the vehicle to his assigned worksite. On average, Anderson drove between 1.5 to 2 hours to his assigned worksite.

122.    After completing his assigned duties at his worksite, Anderson would generally drive between 1.5 to 2 hours back to the shop location. Upon arriving at the shop Anderson would usually work 30 minutes to 1 hours loading up vehicles with raw paving materials for the next day of work.

123.    Defendants would pay Anderson for his time working in the shop at the beginning and end of the workday, and would pay Anderson for his time working at his assigned jobsite. Therefore, Defendants were aware that Anderson was traveling between the shop and his assigned worksite, however Defendants did not account for this traveling time when compensating Anderson.

124.    Despite regularly working over 40 hours per workweek, Defendants failed to correctly compensate Anderson with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work.

125.    Defendants did not compensate Anderson for the time he spent traveling between the shop and his assigned worksites.

126.    During his employment, over twenty-five percent of Anderson's duties were physical tasks, including but not limited to: (1) shoveling to fill holes and spread stone; (2) sweeping; (3) replacing parts and maintaining equipment; (4) carrying and lifting fiber rolls of up to fifty pounds; and (5) standing for long periods of time.

127.    Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Anderson was not compensated with all the wages he earned within seven calendar days after the end of the week in which his wages were earned.

128.    Upon information and belief, Defendants did not provide Anderson with a time of hire notice as required by the NYLL.

129.    Throughout his employment, Anderson received weekly pay stubs from Defendants that did not properly record and/or compensate him for all of the hours that he worked.

130.    In this regard, Defendants failed to provide Anderson with accurate wage statements as required by the NYLL.

16

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

131.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

132.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

133.    Plaintiffs and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

134.    Defendants failed to pay Plaintiffs and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

135.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Agreed Upon Wages**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

136.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

137.    The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the Rule 23 Class.

138.    Pursuant to NYLL, Article 6 § 191(1)(d), Defendants are required to pay Plaintiffs

and the Rule 23 Class the wages they have earned in accordance with the agreed terms of their employment, but not less frequently than semi-monthly, on regular pay days designated in advance by Defendants.

139.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the earned wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations, pursuant to the agreed-upon terms of Plaintiffs' employment.

140.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their agreed-upon earned wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

141.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

142.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the Rule 23 Class.

143.    Defendants failed to pay Plaintiffs and the Rule 23 Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

144.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment

interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Failure to Pay Timely Wages
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

145.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

146.    The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiffs and the Rule 23 Class.

147.    Defendants failed to pay Plaintiffs and the Rule 23 Class all of their wages on a timely basis as required by NYLL § 191(1)(a).

148.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Annual Wage Notices
### (Brought on behalf of Spiciarich, Anderson, and the Rule 23 Class)

149.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

150.    Defendants have failed to supply Spiciarich, Anderson, and the Rule 23 Class with a proper time of hire annual wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this

article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

151.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Spiciarich, Anderson, and the Rule 23 Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

152.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

153.    Defendants failed to supply Plaintiffs and the Rule 23 Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

154.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiffs and the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars,

and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.      That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Hourly Workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for the Gorman Group.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.      Unpaid overtime wages, liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

G.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NY Rule 23 Class with proper time of hire wage notices, or a total of five thousand

dollars each, as provided for by NYLL, Article 6 § 198;

      H.     Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs and the Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

      I.     Prejudgment and post-judgment interest;

      J.     Reasonable attorneys' fees and costs of the action; and

      K.     Such other relief as this Court shall deem just and proper.

Dated:  New York, New York
        October 30, 2020

Respectfully submitted,

Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Putative Class*