**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANDREW SPICIARICH, JOEL O'NEIL, and IAN ANDERSON, on behalf of themselves and all others similarly situated,**<br><br>     **Plaintiffs,**<br><br> -against-<br><br>**THE GORMAN GROUP, LLC; GORMAN BROS., INC.; ALBERT MARK GORMAN, individually; and PAUL ANTHONY GORMAN, individually;**<br><br>     **Defendants.** | **No. 20 Civ. 646 (CFH)** |

### DECLARATION OF BRIAN S. SCHAFFER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Brian S. Schaffer, declare as follows:

1. I am a partner at the firm of Fitapelli & Schaffer, LLP ("F&S") in New York, New York, Plaintiffs' Counsel herein.  F&S is a nationally recognized 8 attorney law firm based in New York City that represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims.  F&S has significant experience prosecuting wage and hour class and collective actions.

2. I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**PROCEDURAL HISTORY**

**Overview of Investigation and Commencement of Action**

4.      Before initiating the instant action, F&S conducted a thorough investigation into Defendants' business and ownership, which included research into their wage and hour policies and/or practices, factual and legal research into the underlying merits of Plaintiffs' claims and possible defenses, factual and legal research as to the proper measure of damages, and the likelihood of collective and class action certification.

5.      Furthermore, F&S conducted an in-depth interview with Andrew Spiciarich who has worked for Defendants since 2014. This interview helped F&S determine the hours that foremen, chippers, operators, and other similar hourly employees ("collectively, "Hourly Workers") were working, the wages they were paid, the nature of their duties, and Defendants' travel time policies. Specifically, F&S discovered that Defendants required Hourly Workers to travel between jobsites without accounting for the time they spent traveling.  Through this investigation, F&S determined that class treatment of this matter was appropriate.

6.      F&S continued its investigation into Defendants, including the sending of FOIA and FOIL requests to the United States and New York Departments of Labor.

7.      As part of its continuous investigation, F&S held additional in-depth interviews with Joel O'Neil and Ian Anderson. These interviews helped F&S confirm how Hourly Workers were paid, the nature of their duties, the travel time polices in place, and other relevant information.

8.      On June 9, 2020, Plaintiffs Spiciarich, O'Neil, and Anderson commenced a class and collective action on behalf of themselves and all other similarly Hourly Workers employed or previously employed by Defendants.

9.      The action asserted that Defendants violated the FLSA and the New York Labor

Law ("NYLL") with regards to overtime compensation. *See* ECF No. 1. Moreover, the action asserted additional violations for Hourly Workers with regards to failure to provide agreed upon wages, and failure to provide accurate wage statements under the NYLL. *Id.*

10.     Specifically, with respect to the overtime wage claims, Plaintiffs alleged that, in part, Defendants failed to account for Hourly Worker's compensable travel time when Hourly Workers worked over forty hours in a single work week. *Id.*

11.     On October 30, 2020, Plaintiffs filed an amended complaint, alleging that Defendants failed to compensate Hourly Workers on a timely basis as required by NYLL § 191.

12.     Specifically, with regard to Plaintiffs' NYLL 191 claim, in June and September of 2020 Defendants notified Plaintiffs of their class-wide remittance of payments which they calculated to provide proper compensation for Hourly Worker's travel time. In this regard, these payments did not fall into the required seven-day period to pay manual workers under NYLL 191(1)(a)(i).

13.     Defendants filed their Answer to the Complaint on November 12, 2020, denying the allegations and asserting various affirmative defenses. *See* ECF No. 20.

14.     On December 17, 2020, the Parties informed the Court that they wished to attend a class-wide settlement conference with the Court in this matter. ECF No. 25. The settlement conference was scheduled for January 20, 2021.

15.     Prior to the settlement conference, 3 additional individuals filed opt-in consent forms to join this action. See ECF Nos. 15, 16, 17. These opt-ins joining were a direct result of outreach by the named Plaintiffs as well as F&S's outreach, website, and blog posts. Before opting in any of the above Plaintiffs, F&S conducted in-depth interviews with these individuals regarding the claims asserted in the Complaint and received and reviewed their documents.

**Pre-Settlement Conference Discovery**

16.     The Parties worked together over several months to exchange relevant documents necessary to prepare for and attend class-wide settlement conference on January 20, 2021. In this regard, the parties participated in numerous phone calls and sent countless e-mails back and forth regarding the data Plaintiffs required to prepare for mediation.

17.      Defendants produced thousands of relevant documents, including, but not limited to, wage statements, time records, job reports, and wage notices for the named and opt-in Plaintiffs, and the full-time records, job reports, and travel pay calculations for all Hourly Workers in the putative classes.

18.     As part of the pre-mediation discovery process, F&S utilized Defendants' production to evaluate Plaintiffs' claims and Defendants' defenses. Upon review of the job reports and time records, F&S was able to determine that Defendants failed to pay Hourly Workers for their travel time. However, the documentation also showed that Defendants' remittance of Travel Pay may have covered all the outstanding travel time hours. A review of these documents also revealed that Hourly Workers in New York were allegedly not provided accurate statements of wages with each payment of wages, as the wage statements provided failed the correct amount of hours worked or compensation owed.

19.     F&S used Defendants' payroll records to calculate class-wide damages by creating damages spreadsheets.  Specifically, F&S created one spreadsheet to calculate damages which showed Defendants' potential exposure to liability if their travel time payments had failed to correctly compensate Plaintiffs and another to show what Defendant's liability may be if their travel time compensation had properly repaid Hourly Workers.

20.     Upon completion, F&S checked and then re-checked the damages spreadsheets for accuracy, such as reviewing the formulas for errors, ensuring the links between spreadsheets were active, ensuring that any updates in spreadsheets were reflected in the final damages spreadsheet, and reviewing the raw data to ensure it was entered correctly.

**The Parties' Settlement Conference**

21.     Prior to the settlement conference, the parties submitted detailed statements with exhibits to the Court.

22.     F&S' comprehensive mediation statement included several exhibits, including documents from F&S' investigation into Defendants. Plaintiffs' mediation statement also contained a detailed analysis of the facts at issue and utilized the most recent case law to support each of Plaintiffs' claims.

23.     The parties appeared for the settlement conference on January 20, 2021 via Zoom. At the mediation, Defendants argued, among other things, that Plaintiffs and other Hourly Workers were made whole by Defendants' Travel Payments.

24.     After a full day of negotiations, the parties reached a settlement in principle for Three Hundred Eighty Thousand Dollars ($380,000).  **Ex. A**, Settlement Agreement ¶¶ 3.1.

25.     On March 2, 2021, the parties fully executed the Settlement Agreement attached hereto as **Exhibit A**.

**SETTLEMENT AGREEMENT**

26.     The $380,000 settlement amount (the "Settlement Fund") is a compromise figure.

27.     In reaching the settlement, F&S took into account the risks of establishing liability and class and collective certification, and considered the time, delay, and financial repercussions in the event of trial and appeal by Defendants.

28.     Although Plaintiffs believe their claims have merit, they recognize the legal, factual, and procedural obstacles to recovery, as Defendants have and will continue to vigorously contest Plaintiffs' claims and their ability to satisfy a judgment if the action does not settle.  In light of the strengths and weaknesses of the case, F&S believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class Members in the face of several obstacles.

29.     The settlement negotiations were at all times hard fought and at arm's-length, and have produced a result that F&S believes to be in the best interests of the class in light of the costs and risks of continued litigation.  Moreover, in our estimation, and based on the data provided by Plaintiffs and Defendants, the settlement represents a significant percentage of the recovery that Plaintiffs and Class Members would have achieved had they prevailed on all of their claims and survived an appeal, and a substantial portion of what Defendants would be able to pay if faced with a judgment.[1]

30.     The Settlement Agreement identifies class members as all those employed by Defendants who were paid for unpaid travel time by Defendants incurred during the Covered Period. There are 98 Class Members. **Ex. A**, Settlement Agreement ¶ 1.4.

## ALLOCATION FORMULA

31.  All class members will be deemed eligible for a payment under this Settlement Agreement. *Id.* ¶ 3.4.

32. A class member's proportionate share of the Allocations above shall be determined by the Claims Administrator pursuant to the following formula:

a.  The percentage each Class Member accounted for in the total amount Defendants

---

[1] By obtaining $380,000, Plaintiffs recovered approximately 59% of their maximum alleged damages of $644,316.23(not including liquidated damages).  However, if Defendants' calculations regarding unpaid travel time were correct, then Plaintiffs recovered 71 % of maximum damages (not including liquidated damages).

remitted to their employees in the travel time payments made in September 2020 and June 2020 will be calculated by utilizing Defendants' data;

b.   Then each Class Member will then be awarded this percentage out of the Net Settlement Fund as their "Settlement Award."

*Id.* ¶ 3.4(B).

## PRELIMINARY APPROVAL AND NOTICE TO CLASS MEMBERS

33.   The Court granted Plaintiffs' Preliminary Approval Motion on April 15, 2021, directed that the Notices be sent to Class Members, and set June 10, 2021 as the original date for a Fairness Hearing. ECF No. 31.  On April 16, 2021, the Court granted the Parties' joint request to reschedule the Fairness Hearing, and reset the Fairness Hearing to June 30, 2021.  ECF No. 32.

34.   On May 20, 2021 Class Counsel informed the Court of an administrative error in class members' notices and requested to reschedule the fairness hearing so corrective notice could be sent. ECF No. 33. The Court granted this request on May 24, 2021, and rescheduled the hearing to July 16, 2021.

35.   On May 10, 2021, the Claims Administrator sent the Court-approved Notice of Proposed Class Action Settlement ("Class Notice") by first class-mail to 98 Class Members. **Ex. C**, Declaration of Caitlin Ripp (Ripp Dec.) ¶ 8. On May 27, 2021, the Claims Administrator sent the Court-approved corrective Class Notice by first class-mail to 98 Class Members. Ripp. Dec ¶ 9 The Notices informed Class Members of the terms of the settlement, as well of their right to opt out from the Settlement or object to the Settlement, and the implications of each such action.  *Id.* ¶ 9. The Notices also advised Class Members of applicable deadlines and other events, such as the Final Approval Hearing, and how Class Members could obtain additional information.  *Id.*  A sample of the Class and Collective Notices are attached as **Exhibit 1** to the Ripp Declaration.  *Id.* The Notices also informed Class Members of Named Plaintiffs' requests for service awards, as

well as Class Counsel's intention to seek one-third of the settlement fund for attorneys' fees plus costs. *Id.*

36.    Prior to the mailing of the Notices, Class Counsel remained in constant contact with the claims administrator, as well as counsel for the Defendants, to ensure the accuracy of the Class List, confirming Class Members' dates of employment, updating addresses received from Class Members, and confirming the accuracy of the Individual Settlement Award calculations.

37.    The deadline for Class Members to opt-out or object to the Settlement was June 28, 2021. *Id.* ¶ 9.

38.    No Class Members opted out of the Settlement.  *Id.* ¶ 11.

39.    No Class Members objected to the Settlement.  *Id.* ¶ 12.

40.    Since the mailing of the Notices, Class Counsel has spoken with Class Members via telephone to answer questions regarding the settlement. All Class Members spoken to be Class Counsel have reacted positively to the settlement terms.

41.    The average individual settlement award is estimated to be $2,377.87 and the maximum individual award is estimated to be $52,314.02.  *Id.* ¶ 17.

**SERVICE AWARDS**

42.    ͏Pursuant to the Settlement Agreement, and subject to Court approval, service awards totaling $19,900.00 will be given to the Named Plaintiffs and Opt-in Plaintiffs in addition to their individualized awards under the allocation formula, in recognition of the services they rendered on behalf of the Class.  **Ex. A**, Settlement Agreement ¶ 3.3.  The Plaintiffs' service awards will be allocated as follows:   Andrew Spiciarich ($7,500.00) Joel O'Neil ($5,000.00), Ian Anderson ($5,000.00), Timothy Murphy ($800.00), Nicholas Smith (800.00), and Jared O'Neil ($800.00).

43.     The Named Plaintiffs were instrumental to the initiation and prosecution of this action, and expended considerable time and effort to assist Class Counsel with this case. Their services included, but were not limited to: informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in their possession; encouraging other individuals to participate in the action and settlement; assisting Class Counsel in reviewing Defendants' document production; assisting counsel to prepare for settlement conference; appearing virtually at the settlement conference, and reviewing and commenting on the terms of the settlement.

44.     The Named Plaintiffs also undertook a significant risk that they would be retaliated against by Defendants and/or "black balled" in the industry for the sake of the Class, as their names and information in this lawsuit are readily available through simple internet and Google searches. In addition, the Named Plaintiffs were identified in newspaper articles, including Law 360 and other publications, thereby increasing this risk. Moreover, Plaintiff Spiciarich is a current employee, making him a potential target of retaliation costing him his job and livelihood. As a result, the Named Plaintiffs took substantial risks in prosecuting the action.

45.     Additionally, the Named Plaintiffs' actions resulted in 3 additional individuals opting into this action before any court-authorized notice or mailing of the Settlement Notices.

46.     The Class and Collective Notices informed Class Members the amount to be paid as service awards to the Named Plaintiffs, in recognition of the services they provided to the Class. **Ex. D**, Ripp Decl., **Ex. 1** Class Notice at 2, No Class Member objected to the service awards, **Ex. D**, Ripp Decl. ¶ 12, and the Named Plaintiffs have no conflict with any Class Member.

## ATTORNEYS' FEES & EXPENSES

47.     Pursuant to the Settlement Agreement, Class Counsel requests attorneys' fees equal

to one-third of the Settlement Fund, or $126,666.66 Ex. **A**, Settlement Agreement ¶ 3.2(A); **Ex. D**, Ripp Decl., **Ex. 1** Class Notice at 2. Class Counsel is also seeking an award of costs of $402.00.

48.     The Notices informed Class Members that Class Counsel will apply to the Court for attorneys' fees in the amount of $126,666.66 (one-third of the Settlement Fund) and costs of up to $1,000.00.  **Ex. D**, Ripp Decl., **Ex. 1** Class Notice at 2.  No Class Member has objected to Class Counsel's request for attorneys' fees and costs.  **Ex. D**, Ripp Decl. ¶ 12.

49.     Class Counsel's request for one-third of the fund, or $126,666.66 is 2.70 times their current lodestar of $46,867.50.

50.     F&S has significant experience prosecuting wage and hour class and collective actions such as this one.  The firm has prosecuted wage and hour cases that have been certified as class or collective actions with F&S being appointed class counsel, including: *See, e.g., Bruno v. Wells Fargo Bank N.A.*, No. 19 Civ. 587 (RJC), 2021 WL 964938 (W.D. Pa. Mar. 15, 2021); *Hernandez v. Lochend Energy Services*, No. 20 Civ. 00064, ECF No. 44 (D.N.D. March 5, 2021); *Bruton v. Pioneer Natural Resources Company*, No. 20 Civ. 00203, ECF No. 20 (W.D. Tex. Jan. 27, 2021); *Kirby v. FIC Restaurants, Inc.*, No. 19 Civ. 1306 (FJS/ML), 2020 WL 3501398 (N.D.N.Y. Jun. 29, 2020); *Lu v. OD Inspections*, No. 20 Civ. 02063, ECF No. 24 (S.D. Tex. Dec. 24, 2020); *LeJeune v. Mammoth Energy Services, Inc.,* No. 19 Civ. 00286, ECF No. 102 (W.D. Tex. July 31, 2020); *Millin v. Brooklyn Born Chocolate*, No. 19 Civ. 3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020); *Warren v. MBI Energy Services, Inc.*, No. 19 Civ. 00800, ECF No. 33 (D. Colo. Feb. 25, 2020); *Carr v. Patriot Well Solutions, LLC*, No. 5:19 Civ. 00212, ECF No. 62 (W.D. Tex. Feb. 11, 2020); *Murillo v. Berry Bros. General Contractors, Inc.*, No. 6:18-cv-1434, 2019 WL 4640010 (W.D. La. Sept. 23, 2019); *Borecki v. Raymours Furniture Company, Inc.*, No. 17 Civ. 01188, ECF No. 98 (Sept. 10, 2019); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16 Civ. 03958, ECF No. 95 (N.D. Ill.

Nov. 16, 2018); *Schaefer v. M&T Bank Corporation*, No. 14 Civ. 06622, ECF No. 90 (S.D.N.Y. Nov. 1, 2018); *De Jesus et al. v. Incinia Contracting, Inc.*, No. 17 Civ. 5733 (KHP), 2018 WL 3343236 (S.D.N.Y. June 22, 2018); *Suarez v. Rosa Mexicano Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319, (S.D.N.Y. April 13, 2018); *Zorrilla v. Carlson Rests., Inc.*, No. 14 Civ. 2740 (AT), 2018 WL 1737139 (April 9, 2018); *Alverson v. BL Restaurant Operations LLC*, No. 16 Civ. 00849 (OLG) (RBF), 2017 WL 5491998 (W.D.T.X. Nov. 11, 2017); *Sanchez v. Bentzys Construction, Inc.*, No. 16 Civ. 07072 (E.D.N.Y. Sept. 19, 2017); *Melito v. American Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL 3995619 (S.D.N.Y. September 11, 2017); *Hotaranu v. Star Nissan Inc.*, No. 16 Civ. 5320 (KAM) (RML), 2017 WL 1390808 (E.D.N.Y. April 12, 2017); *Crosby et al. v. Lasership, Inc.*, No. 15 Civ. 08694 (GWG), ECF No. 171 (S.D.N.Y. June 30, 2017); *Almonte v. Marina Ice Cream Corp.*, No. 16 Civ. 00660 (GBD), 2016 WL 7217258 (S.D.N.Y. Dec. 8, 2016); *Illoldi v. Koi NY LLC*, No. 1:15 Civ. 06838 (VEC), 2016 WL 5900218 (S.D.N.Y. Oct. 7, 2016); *Hadel v. Gaucho*, No. 15 Civ. 3706 (RLE), 2016 WL 3647600 (S.D.N.Y. June 30, 2016); *Chhab v. Darden Restaurants Inc.*, No. 11 Civ. 08345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016); *Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (S.D.N.Y. April 27, 2016); *Gonqueh v. Leros Point to Point, Inc.*, 14 Civ. 5883 (GHW), 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016); *Bravo v. Palm W. Corp.*, No. 14 Civ. 9193 (SN), 2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015); *Carpenter v. Paige Hospitality Group, LLC*, No. 13 Civ. 4009 (GBD), 2015 U.S. Dist. LEXIS 82771 (S.D.N.Y. June 2, 2015); *Hamadou v. Hess Corporation*, No. 12 Civ. 250 (JLC), 2015 WL 3824230 (S.D.N.Y. June 18, 2015); *Espinoza v. Wanrong Trading Corp.*, No. 13 Civ. 1727 (FB), ECF No. 33 (E.D.N.Y. December 23, 2014); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Apr. 28, 2015); *Flores*

*v. One Hanover, LLC*, No. 13 Civ. 5184 (AJP), ECF No. 40 (S.D.N.Y. June 9, 2014); *Simsek v. New York State Catholic Health Plan, Inc.*, No. 11 Civ. 5393 (FB)(JMA), 2014 U.S. Dist. LEXIS 22979 (E.D.N.Y. Feb. 14, 2014); *Diombera v. The Riese Organization, Inc.*, No. 12 Civ. 8477 (RJS)(HP), ECF No. 73 (S.D.N.Y. Oct. 21, 2013); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (WHP)(RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013); *Chang v. BD Stanhope, LLC*, No. 10 Civ. 8577 (TPG), ECF No. 48 (S.D.N.Y. Nov. 15, 2012); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012); *Matheson v. The Glazier Group, Inc.*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011); *O'Dell. v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).

51.     I received a *Juris Doctor* degree (dean's list) from New York Law School in 2003. I was admitted to the bar of the State of New York in 2004, and am also admitted to the bars of the Second Circuit Court of Appeals and the United States District Courts for the Southern, Eastern, Northern, and Western Districts of New York.  I am a member in good standing of each of these bars.  I became a partner of F&S in January 2008.  Since starting F&S in 2008, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.  I have successfully argued cases in the New York State Appellate Division.  I am a member of the National Employment Lawyers Association ("NELA"), NELA's New York Chapter, the New York County Lawyer's Association ("NYCLA"), and the American Bar Association ("ABA"). I have served as a panelist at CLE presentations for wage and hour issues for NELA, NYCLA, ACI,

and Lawline. I have frequently been contacted by the media and the press to discuss current employment law related issues, and was a contributing editor to the ABA's 2020 FLSA treatise.

52.     Hunter G Benharris has been employed at F&S since January 2019 as an associate attorney. Mr. Benharris graduated from the Pennsylvania State University in 2015, and Brooklyn Law School in 2018. While in law school, Mr. Benharris interned at a well-known employment law firm providing support on wage and hour matters. Mr. Benharris participated in Brooklyn Law School's employment clinic, representing employees in unemployment insurance proceedings. Mr. Benharris is also a member of NELA's New York Chapter. Mr. Benharris is licensed to practice law in the State of New York and is admitted in the Southern, Eastern, and Northern District Courts of New York.

53.     David J. Sack has been employed at F&S since January 2020 as an associate attorney. Mr. Sack graduated from Syracuse University in 2016, and Touro Law Center in 2019. While in law school, Mr. Sack interned as a law clerk with F&S, providing support on wage and hour matters. Mr. Sack is a member of NELA's New York Chapter. Mr. Sack is licensed to practice law in the State of New York and is admitted in the Southern District Court of New York.

54.     Melissa Torres was employed at F&S from July 2019 through February 2021 as a paralegal. Ms. Torres graduated from John Jay College of Criminal Justice with a B.A. in Forensic Psychology.

55.     Nicole D'Apice has been employed at F&S since November 2016 as an administrative assistant.  Ms. D'Apice graduated from College of Staten Island in June 2016 with a B.A. in Geography.

**Time Spent on the Litigation**

56.     As of the filing of the instant motion, Plaintiffs' Counsel has spent 123.20 hours

13

litigating and settling this case, which includes approximately 118.40 attorney hours, and 4.80 paralegal and law clerk hours. Throughout the litigation, Class Counsel has been available to clients around the clock via phone and email. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in the case. F&S keeps contemporaneous billing records for all matters, and the contemporaneous billing records for this matter are attached hereto as **Ex. D.**

57.     Due to the experience of its attorneys in representing workers in litigation of this type, Plaintiffs' Counsel utilizes a small team of attorneys and support personnel to minimize duplication of efforts and maximize both efficiency and billing judgment.

58.     Plaintiffs' Counsel ordinarily and regularly bills legal time on an hourly fee basis, based upon each attorney's standard hourly rate. Currently, Plaintiffs' Counsel's hourly rates range from $475 to $675 per partner hour, $225 to $450 per associate's hour, $150 per paralegal's hour, and $125 per administrative assistant's hour. Plaintiffs' Counsel's clients regularly accept and pay these hourly rates.

59.     Since 2014, all of F&S's cases have been taken on pure contingency, including all of Plaintiffs' Counsel's out of pocket costs and expenses. Thus, when Plaintiffs' Counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm. Plaintiffs' Counsel frequently turns away cases, including hourly matters. For example, as of November 13, 2014, the date of the last hourly matter undertook by the firm, the partner rate for Mr. Schaffer was billed to clients at $500.00 per hour.

60.      Below are charts summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time.

| FITAPELLI & SCHAFFER, LLP | | | |
|---|---|---|---|
| INDIVIDUAL, POSITION | HOURLY RATE | TOTAL HOURS | FEES |
| Brian S. Schaffer, Partner | $675 | 34.30 | $23,152.50 |
| Hunter G Benharris, Associate | $275 | 81.60 | $22,440.00 |
| David S. Sack, Associate | $225 | 2.50 | $562.50 |
| Mellisa Torres, Admin. Asst. | $125 | 4.50 | $675.00 |
| Nicole D'Apice, Admin. Asst. | $125 | .30 | $37.50 |
| TOTAL | | 123.20 | $46,867.50 |

*See* **Ex. D**, generally.

61.     In my experience, administering class and/or collective settlements of this nature and size requires a substantial and ongoing commitment, and the requested attorneys' fees are not based solely on time and effort already expended, they are also meant to compensate Plaintiffs' Counsel for time that we will be required to spend administering the settlement in the future.  For example, Plaintiffs' Counsel anticipates spending additional time with respect to preparation for the Fairness Hearing, and administering the settlement.

62.     In Plaintiffs' Counsel's experience, law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.

### Risks of Litigation

63.     Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk.  The retainer agreement signed by Named Plaintiffs reflect this.  Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are

asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  For example, in *Benavidez v. Plaza Mexico, Inc.*, No. 09 Civ. 5076 (KNF) (S.D.N.Y.) and *Paez v. Plaza Mexico, Inc.*, No. 09 Civ. 9574 (KNF) (S.D.N.Y.) defendants filed bankruptcy after extensive discovery and motion practice.  Even after the court entered a judgment against the defendants in excess of $5,000,000.00 after a trial on damages, neither the plaintiffs nor F&S have collected any money in connection with both those cases.   In *Matheson v. T-Bone Restaurant, LLC a/k/a Strip House New York*, No. 1:09-cv-04214 (DAB) (S.D.N.Y.), at the time of the plaintiffs' final approval motion regarding class settlement, F&S' lodestar was negative 1.43.  During the subsequent three years, F&S has expended further time and resources in collecting the settlement payment; to date, the defendants remain in default as they still owe $123,574.64 out of $495,000.

64.     As an example showing the risks of proceeding to trial, in *Rios et al. v. Louya Corp. et al.*, No. 1:14-cv-06800 (GHW) (S.D.N.Y.), F&S obtained a verdict of $1,044,512.62 on behalf seven restaurant workers after a week-long bench trial.  However, due to the defendants' bankruptcy filings, it is unlikely that the plaintiffs or F&S will recover any significant money in that case.  The above three examples highlight the risks associated with settlement and obtaining a judgment after trial.  Unfortunately, F&S has also recovered zero or has had a negative lodestar in other cases as well.

65.     As an example showing the risks of continued litigation to the summary judgment stage, in *Martin et al. v. Sprint United Management Co., et al.*, No 15 Civ. 05237 (PAE), ECF No. 322 (S.D.N.Y. Sept. 27, 2017), Judge Engelmayer granted the defendants' Motion for Summary Judgment, resulting in a full dismissal of the plaintiffs' individual and collective wage and hour claims.

66.     As can be seen from the examples above, Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

67.     Additionally, in F&S's experience, wage and hour cases are inherently high-risk due to often unexpected closings and collection issues, notwithstanding a business's reputation or established years of business.  For example, Artisanal Bistro, Koi-SoHo, and other businesses operating in New York that F&S previously sued for similar wage issues have closed within the last 2 years, despite their location, size, and prestige.

68.     To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  Class Counsel continues to take on difficult cases like this one because we believe that they are important as many individual workers may be unwilling or unable to front the costs of litigation for an outcome that is uncertain.

**Litigation Costs and Expenses**

69.     Class Counsel also incurred the following out-of-pocket expenses prosecuting the litigation as part of its request for one-third of the settlement fund, which were incidental and necessary to the representation of the Classes:

| FITAPELLI & SCHAFFER LLP | |
|---|---|
| Filing Fee | $402.00 |
| **TOTAL** | **$402.00** |

*See* **Ex. E.**

**EXHIBITS**

17

70.     Attached as **Exhibit A** is a true and correct copy of the parties' Settlement Agreement, which was fully executed by the parties on March 2, 2021.

71.     Attached as **Exhibit B** is the Court's Order Granting Preliminary Approval

72.     Attached as **Exhibit C** is a true and correct copy of the Declaration of Caitlin Ripp.

73.     Attached as **Exhibit D** is a true and correct copy of a summary of Class Counsel's Time Records and Expenses.

74.     Attached as **Exhibit E** is a true and correct copy of the transcript of the Fairness Hearing in *Illoldi et al. v. Koi Group Inc. et al*, No. 15 Civ. 6838 (VEC), hr'g tr. at pg. 9-12 (S.D.N.Y. Oct. 7, 2016).

75.     Attached as **Exhibit F** is a true and correct copy of transcript of the Fairness Hearing in *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326, hr'g tr. at p. 16 (S.D.N.Y. Dec. 19, 2014).

76.     Attached as **Exhibit G** is a true and correct copy of transcript of the Fairness Hearing in *Hadel et al. v. Gaucho LLC et al.*, No. 15 Civ. 3706 (RLE), hr'g tr. at p. 9-10 (S.D.N.Y. June 30, 2016).

77.     Attached as **Exhibit H** is a true and correct copy of Plaintiffs' Proposed Order Granting Final Approval.

Dated:  New York, New York
        July 6, 2021

Respectfully submitted,

/s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and
the Putative Class*