# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW SPICIARICH, JOEL O'NEIL, and IAN ANDERSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>THE GORMAN GROUP, LLC; GORMAN BROS., INC.; ALBERT MARK GORMAN, individually; and PAUL ANTHONY GORMAN, individually;<br><br>Defendants. | No. 20 Civ. 646 (FJS/CFH) |

### JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined) and Defendants (as hereinafter defined) (together, "the Parties").

### RECITALS

WHEREAS, Plaintiffs, Andrew Spiciarich, Joel O'Neil, and Ian Anderson (hereafter "Plaintiffs") filed a Class and Collective Action Complaint on June 9, 2020;

WHEREAS, the Complaint asserts class-action claims under the New York Labor Law ("NYLL"), and collective-action claims under the Fair Labor Standards Act ("FLSA"), and seeks recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs;

WHEREAS, Defendants have denied and continue to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined); have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, notwithstanding the foregoing, and without admitting or conceding any fault, wrongdoing, liability or damages, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, the Parties participated in a settlement conference on January 20, 2021 with the assistance of the Honorable Christian F. Hummel;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable

to the Plaintiffs and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

    The defined terms set forth herein shall have the meanings ascribed to them below.

    1.1  **Agreement**. "Agreement" shall mean this Joint Stipulation of Settlement and Release.

    1.2  **Claims Administrator.** "Claims Administrator" shall mean A.B. Data, the entity selected by Plaintiffs to provide notice to the Class and administer payment of the settlement to Class Members.

    1.3  **Class Counsel.** "Class Counsel" shall mean Fitapelli & Schaffer, LLP.

    1.4  **Class Members.** "Class Members" shall mean all those employed by Defendants who were paid for unpaid travel time by Defendants incurred during the Covered Period. There are 98 Class Members.

    1.5  **Court.** "Court" shall mean the United States District Court for the Northern District of New York.

    1.6  **Covered Period.** "Covered Period" shall mean the period from June 9, 2014, through January 20, 2021.

    1.7  **Defendants.** "Defendants" shall mean Gorman Bros., Inc., The Gorman Group, LLC, Albert Mark Gorman, and Paul Anthony Gorman

    1.8  **Defendants' Counsel.** "Defendants' Counsel" shall mean Gleason Dunn Walsh & O'Shea. For the purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Lisa F. Joslin, Esq. and Nancy S. Williamson, Esq. of Gleason Dunn Walsh & O'Shea.

    1.9  **Effective Date.** The "Effective Date" is the date on which this Agreement becomes effective, which shall mean the later of: (1) thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken of the final approval order; or (2) the Court's entry of a final order after resolving any appeals.

    1.10 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Final Approval.

    1.11 **Litigation.** "Litigation" shall mean *Spiciarich et al. v. The Gorman Group, LLC. et al.*, No. 20 Civ. 646, pending in the United States District Court for the Northern District of New York.

1.12   **Net Settlement Fund**. "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for Court-approved attorneys' fees and costs as described in Section 3.2, Court-approved service awards to Plaintiffs as described in Section 3.3, and settlement administration fees and costs, as described in Section 2.1.

1.13   **Reserve Fund**. "Reserve Fund" shall mean the $10,000 reserved from the Settlement Fund identified above to address errors and omission in the calculation of Class Members' individual shares of the settlement, including but not limited to (1) claims from individuals claiming to be Class Members but not identified as such by Defendants and (2) Class Members' challenging their share of the Net Settlement Fund.

1.14   **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final approval order entered by the Court after the Fairness Hearing.

1.15   **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.16   **Parties.** "Parties" shall mean Plaintiffs and Defendants.

1.17   **Plaintiff.** "Plaintiffs" shall refer to Andrew Spiciarich, Joel O'Neil, and Ian Anderson.

1.18   **Qualified Class Member.** "Qualified Class Member" shall mean all Class Members who do not opt out or object, pursuant to Sections 2.6 and 2.7 of this Agreement.

1.19   **Releasees.** "Releasees" shall mean Defendants, as defined herein, and Defendants' present and former parent companies, subsidiaries, heirs, related or affiliated companies, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them.

1.20   **Settlement Fund.** "Settlement Fund" shall mean the total settlement fund of Three Hundred Eighty Thousand Dollars and No Cents ($380,000.00).

1.21   **Individual Settlement Amount.** "Individual Settlement Amount" shall mean the amount payable to each Qualified Class Member pursuant to Section 3.4 of this Agreement.

**2.**   **APPROVAL AND CLASS NOTICE**

2.1   **Retention of Claims Administrator.** Plaintiffs' counsel has retained A.B. Data to administer the settlement process. The Claims Administrator shall be responsible for mailing the notice, calculating Class Members' share of the Net Settlement Fund (pursuant to the formulas outlined in Section 3.4), and cutting and mailing checks to Qualified Class Members as provided herein. The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement. The Claims Administrator's fees shall be paid from the Settlement Fund.

3

2.2 **Preliminary Approval by the Court.** Within fifteen (15) calendar days after the execution of this Agreement, unless otherwise agreed, Plaintiffs will submit to the Court a Motion for Preliminary Approval of the Class Action Settlement and Collective Action Settlement ("Preliminary Approval Motion"). In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Plaintiffs as well as opt-in Plaintiffs as more fully set forth herein.

2.3 **The Preliminary Approval Motion**. In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things: (a) a proposed Notice of Settlement of the Class/Collective Action Lawsuit and Fairness Hearing, which is appended hereto as Exhibit A, and (b) a proposed Order Granting Preliminary Approval. The Parties will work together diligently and in good faith to obtain preliminary and final approval expeditiously. The Preliminary Approval Motion will seek the setting of dates for Class Members to opt-out, objections, and a Fairness Hearing. Subject to Defendants' prior approval of the proposed Order and dates, Defendants will not oppose the Preliminary Approval Motion.

2.4 **Denial of Preliminary Approval.** If the Court denies the Motion for Preliminary Approval, then the Parties agree to jointly seek reconsideration of the ruling or seek Court approval of a renegotiated settlement.

2.5 **Final Order from the Court.** Plaintiffs will seek to obtain from the Court, as a condition of settlement, a Final Order. The proposed Final Order will, among other things: (a) finally certify a Rule 23 Class and FLSA Collective Class for purposes of settlement, (b) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.7, (c) dismiss the Litigation with prejudice, (d) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, (e) award class counsel fees and costs, (f) award service awards to the Plaintiffs as more fully set forth herein, and (g) incorporate the terms of this Agreement. Defendants will not oppose the application for the Final Order.

2.6 **Class Notice**

(A) Within ten (10) days after preliminary approval, Defendants will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the (1) names, (2) last known addresses, (3) last known telephone numbers, (4) social security numbers, and (5) dates of employment of each Class Member. The list will subsequently be supplemented with any additional names and information covering the period through the date on which the Court grants Preliminary Approval of the settlement.

(B) Within fourteen (14) days of the date on which Defendants provide the Class List, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit A to all Class Members using each

4

        individual's last known address as recorded in Defendants' records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the notice is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt re-mailings as described below.

    (C)    If any Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt up to two re-mailings per Class Member.

    (D)    Any Class Member may request exclusion from the Class by "opting out." Any Class Member who chooses to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address and telephone number of the Class Member to be valid. It must also contain the words "I elect to exclude myself from the settlement in *Spiciarich et al. v. The Gorman Group, LLC. et al.*, No. 20 Civ. 646" in order to be valid. To be effective, such Opt-Out Statement must also be sent via mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 30 calendar days after the Claims Administrator mails the Notice.

    (E)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation, following which the documents shall be destroyed.

    (F)    Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a release of both their FLSA and state law claims.

2.7    **Objections to Settlement.**

    (A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be 30 calendar days after the Claims Administrator mails the Notice. The statement must contain the name, address and telephone number of the Class Member to be valid. It must also contain the words "I object to the settlement in *Spiciarich et al. v. The Gorman Group, LLC. et al.,* No. 20 Civ. 646" and set forth the reasons for the objection. Any reasons not included in the written objection will not be considered. The Claims Administrator shall stamp the date received on the original objection and send copies of each objection to Class Counsel and Defendants' Counsel not

        later than 3 calendar days after receipt thereof. Class Counsel shall file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the end of the Opt-Out period.

    (B)    A Class Member who files objections to the settlement ("objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections by including the words, "I intend to appear at the Fairness Hearing" in their written objection. An objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous sections. Any Class Member who has submitted an Opt-Out Statement may not submit objections to the settlement.

    (C)    The Parties may file with the Court written responses to any objections no later than 7 calendar days before the Fairness Hearing.

2.8    **Motion for Final Approval. No later than 14 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for** Final Approval. The Fairness Hearing shall be held at the Court's convenience.

2.9    **Entry of Settlement.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) finally certify the Class for purposes of settlement, (b) enter settlement in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Qualified Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, (f) incorporate the terms of this Settlement and Release, (g) award Class Counsel fees and costs; and (h) award Service Awards to Plaintiffs and opt-in Plaintiffs as more fully set forth herein.

2.10    **Effect of Failure to Grant Final Approval.** In the event the Court does not enter settlement in accordance with this Agreement, or such settlement does not become Final as defined herein, the Parties agree to proceed as follows. The Parties jointly agree to (a) seek reconsideration of the decision denying entry of settlement, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration is denied, or a mutually-agreed-upon settlement is not approved:

    (A)    The Litigation will proceed as if no settlement had been attempted.

    (B)    The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

**3.     SETTLEMENT TERMS**

3.1   **Settlement Payment.**

(A)   Defendants agree to pay Three Hundred Eighty Thousand Dollars and No Cents ($380,000.00), which shall resolve and satisfy: (a) Court-approved attorneys' fees and costs; (b) all amounts to be paid to Class Members; (c) Court-approved service payments to Plaintiffs and opt-ins; and (d) the Claims Administrator's fees. The Three Hundred Eighty Thousand Dollars and No Cents ($380,000.00) shall be paid to the Claims Administrator within 5 days of the execution of this Agreement.

(B)   Within 5 days of the Effective Date, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

(1)   Paying Class Counsel's Court-approved attorneys' fees and costs as described in Section 3.2(A).

(2)   Paying the Claims Administrator, a flat fee of $10,000.

(3)   Paying Court-approved service payments as described in Section 3.3.

(4)   Paying Qualified Class Members their portion of the Settlement Payment as described in Section 3.4.

3.2   **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)   Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than one-third of the Settlement Fund as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses (up to $1,000) from the Settlement Fund. Defendants will not oppose such applications.

(B)   The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.3   **Service Payments to Plaintiffs and Opt-In Plaintiffs.** Plaintiff Andrew Spiciarich will apply to the Court to receive Seven Thousand Five Hundred Dollars ($7,500.00), Plaintiffs Joel O'Neil and Ian Anderson will apply to the Court to receive Five Thousand Dollars ($5,000.00) each. Opt-in Plaintiffs Nicholas Smith, Timothy Murphy, Jarred O'Neil will apply to the Court to receive Eight Hundred Dollars ($800.00), each from the Settlement Fund for services rendered to the Class. Defendants will not oppose such application. The service awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund. The substance of the above-referenced Plaintiffs' application for service payments is not part of this Agreement and is to be considered separately from the Court's consideration of the

fairness, reasonableness, adequacy and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application(s) for service awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.4   **Distribution to Qualified Class Members.**

(A)   Qualified Class Members will be deemed eligible for a payment hereunder.

(B)   A Qualified Class Member's proportionate share of the Net Settlement Fund shall be determined by the Claims Administrator pursuant to the formula set forth below:

(1)   The percentage each Qualified Class Member accounted for in the total amount Defendants remitted to their employees in the travel time payments made in September 2020 and June 2020 will be calculated by utilizing Defendants' data;

(2)   Then each Qualified Class Member will then be awarded this percentage out of the Net Settlement Fund as their "Settlement Award."

The Claims Administrator's calculations regarding Qualified Class Members' proportionate shares of the Net Settlement Fund will be final and binding.

(C)   Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

(D)   The Claims Administrator shall mail to all Qualified Class Members their proportionate share of the Net Settlement Fund within 5 days of the Effective Date. The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses.  Such efforts shall include using social security numbers to obtain better address information.  Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator.  The Claims Administrator shall not utilize or disclose information received in connection with this Agreement except in connection with executing the terms of this Agreement.

(E)   Qualified Class Members will have ninety (90) calendar days after their check date to redeem their settlement payments.  If Qualified Class Members do not redeem their settlement payment checks within the 90-day period, their settlement checks will be void.  If a Qualified Class Member alerts Class Counsel, Defendants' Counsel, or the Claims Administrator during the 90-day period to redeem settlement payments that he or she has not received his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Qualified Class Member's original settlement check and reissue that Qualified Class Member's settlement check.  All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter.  The Claims Administrator will mail a reminder

       postcard after 60 days to all Class members who have not cashed their settlement check.

(F)    If, in the Claims Administrator's view, it would be administratively feasible to redistribute the amount remaining in the Settlement Fund after all allocations, the Settlement Administrator will so advise the Parties. Class Counsel will decide whether to redistribute the remaining amount among the Class Members who cashed their settlement checks or donate the amount to a *cy pres* designee. If Class Counsel decides it would not be administratively feasible to redistribute the amount remaining in the Settlement Fund after all allocations, it will be donated to a *cy pres* designee the National Employment Law Project (NELP). Amounts remaining after the first distribution may be used to resolve any additional claims made by Class Members or individuals claiming to be Class Members who are not identified as such by Defendants subject to Section 3.4(G) below.

(G)    There will be no reversion to the Defendants. The entire Net Settlement Fund will be divided among Qualified Class Members based on the allocation formula set forth in Section 3.4(B) above, and any remainder shall be donated to a *cy pres* designee as set forth in Section 3.4(F) above.

(H)    All payments to Qualified Class Members made pursuant to this Agreement shall be deemed to be paid to such Qualified Class Members solely in the year in which such payments actually are received by the Class Members.

3.5    **Taxability of Settlement Payments.**

(A)    For tax purposes, 100% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as liquidated damages and prejudgment interest.

(B)    Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made without withholding and shall be reported by the Claims Administrator to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any service payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and Social Security number on an IRS Form 1099

3.6    **Release**

(A)    **Release of Claims.** Upon the Effective Date (*see* Section 1.9) of the settlement, the Plaintiffs, and each Class Member who does not timely opt out, on their behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all claims under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, travel pay, gap time pay, overtime pay, failure to maintain and furnish employees with accurate wage statements, and other proper wage records and all other claims that were or, could

have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including but not limited to the FLSA, NYLL and New York Code of Rules and Regulations), from June 9, 2014 to the date of final approval with the exception of retaliation. In addition, each Qualified Class Member who deposits their settlement check releases Defendants from any FLSA claims for unpaid wages, liquidated damages, and attorneys' fees and costs related to such claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date of final approval, with the exception of retaliation claims. Plaintiffs Andrew Spiciarich, Joel O'Neil, and Ian Anderson will release any retaliation claims they hold from June 9, 2014 to the date of final approval. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs.

Class Members will release their claims through the signature line on their settlement checks. The settlement checks shall contain the following language:

> By endorsing this check, I consent to join the FLSA collective action and NYLL class action against Defendants styled *Spiciarich et al. v. The Gorman Group, LLC. et al.,* No. 20 Civ. 646 and release Defendants from all wage and hour claims under the Fair Labor Standards Act and New York Labor Law which have been brought in the Litigation or that are based on the same facts and circumstances as the claims in the Litigation, including but not limited to overtime wage claims, for all time period from June 9, 2014 through final approval.

(C) **No Assignment.** Plaintiffs, on behalf of the Class and each individual Class Member, represents and warrants that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof.

3.7 **Miscellaneous**

(A) **No Retaliation.** Defendants agrees not to retaliate against any workers for their participation in this settlement or litigation.

(B) **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(C) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and

contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(D) **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Qualified Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(E) **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(F) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(G) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(H) **Severability.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect. However, if any portion of the Release of Claims provisions in paragraph 3.6 is held to be unenforceable for any reason by a court of competent jurisdiction in an action commenced by a Qualified Rule 23 Class Member or by any other person acting on their behalf, then the Qualified Rule 23 Class Member shall return to Defendants the payment received by the Qualified Rule 23 Class Member under this Agreement.

(I) **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(J) **Continuing Jurisdiction.** The United States District Court for the Northern District of New York shall retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(K) **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver,

11

modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(L) **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.  The failure of one or more Plaintiffs to sign this Agreement does not affect its enforceability.

(M) **Facsimile/Electronic Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

[SIGNATURES ON FOLLOWING PAGE]

Feb 12, 2021
_____          By:   _____
Date:                                     Andrew Spiciarich (Feb 12, 2021 12:19 EST)
                                             Andrew Spiciarich


_____          By:   _____
Date:                                     Joel O'Neil


_____          By:   _____
Date:                                     Ian Anderson

13

|  |  |  |
|---|---|---|
| _____<br>Date: | By: | _____<br>Andrew Spiciarich |
| Feb 12, 2021<br>Date: | By: | *Joel oneil (Feb 12, 2021 16:34 EST)*<br>Joel O'Neil |
| _____<br>Date: | By: | _____<br>Ian Anderson |

13

Date: _____  By: _____
                          Andrew Spiciarich

Date: _____  By: _____
                          Joel O'Neil

Date: **Feb 12, 2021**  By: _____
                          Ian Anderson (Feb 12, 2021 12:54 EST)
                          Ian Anderson

this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

[SIGNATURES ON FOLLOWING PAGE]

Date: _____

By: _____
Andrew Spiciarich

Date: _____

By: _____
Joel O'Neil

Date: _____

By: _____
Ian Anderson

Date _____

By: _____

Title: _____
The Gorman Group, LLC
Gorman Bros., Inc.

Date 2/20/21

By: *[signature]*
Albert Mark Gorman

Date _____

By: _____
Paul Anthony Gorman

9

_____  By: _____
Date

Title: _____

        The Gorman Group, LLC
        Gorman Bros., Inc.

_____  By: _____
Date
        Albert Mark Gorman

2/18/2021  By: *[signature]*
Date
        Paul Anthony Gorman

14

2/17/21
Date

By: *Joseph N. Farone* (signature)

Title: Chief Executive Officer
The Gorman Group, LLC
Gorman Bros., Inc.

_____
Date

By: _____
Albert Mark Gorman

_____
Date

By: _____
Paul Anthony Gorman

14