# EXHIBIT E

GZ7XIL120-cv-00646-CFLC Document 35-7 Filed 07/06/21 Page 2 of 13
Case 1:15-cv-06838-VEC Document 64 Filed 04/27/17 Page 1 of 12

1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

EDUARDO ILLOLDI, et al.,

            Plaintiffs,

        v.                              15 CV 6838 (VEC)

KOI GROUP INC., et al,

            Defendants.

------------------------------x
                                        New York, N.Y.
                                        October 7, 2016
                                        10:30 a.m.
Before:

            HON. VALERIE E. CAPRONI,

                              District Judge

                   APPEARANCES

FITAPELLI & SCHAFFER
     Attorneys for Plaintiffs
BY:  BRIAN S. SCHAFFER
     ARMANDO ORTIZ

ALLYN & FORTUNA
     Attorneys for Defendants
BY:  NICHOLAS FORTUNA
     PAULA LOPEZ
```

1              (Case called)

2              THE DEPUTY CLERK:  All counsel please identify

3    yourself for the record.

4              MR. SCHAFFER:  Brian Schaffer from Fitapelli &

5    Schaffer representing plaintiffs.  Alongside me is Armando

6    Ortiz, an associate.

7              MR. FORTUNA:  Nicholas Fortuna from Allyn & Fortuna

8    for the defendants.

9              MS. LOPEZ:  Paula Lopez from Allyn & Fortuna for the

10   defendants as well.

11             THE COURT:  We're here for a fairness hearing on the

12   class settlement in this case.

13             Let me make sure I understand, Mr. Schaffer, where we

14   are on this.  You indicated that the best-case scenario on your

15   damages is $1.76 million without liquidated damages.

16             Correct?

17             MR. SCHAFFER:  That's correct, your Honor.

18             THE COURT:  So it's going to be roughly $3,000,000

19   with liquidated damages?

20             MR. SCHAFFER:  Yes.

21             THE COURT:  The settlement is $800,000?

22             MR. FORTUNA:  Yes.

23             MR. SCHAFFER:  Yes, your Honor.

24             THE COURT:  So it's a substantial discount off of

25   best-case scenario.

1          MR. SCHAFFER:  I would say that's fair, but I think
2   it's a very good result given the claims here, which there were
3   very interesting legal issues, the largest being really can
4   sushi chefs participate in a tip pool under the FLSA and the
5   New York Labor Law.
6          The department of labors for both New York state and
7   the Federal Department of Labor have opinion letters saying
8   that in certain circumstances sushi chefs can be in the tipping
9   pool.  Essentially, if we would have lost that issue, this case
10  would have had much less value.  We could have potentially lost
11  the case on that issue.
12         THE COURT:  Why is that such a big determinate?  Does
13  your claim that they were mispaid really hinge on someone who
14  was not entitled to participate in the tip pool participating?
15         MR. SCHAFFER:  So there are two ways for me to get
16  essentially full minimum wage in this case, the first being
17  notice of the tip credit, the second being a person that should
18  not be in the tip pool who participated.
19         Regarding the notice issue, if I just had that issue
20  alone, that would also have been a very tough case for me.  Koi
21  is a real corporate operation.
22         THE COURT:  So I gather.
23         MR. SCHAFFER:  They have paperwork.  This isn't a
24  small restaurant in Jackson Heights that pays people cash.
25         THE COURT:  Just hypothetically in Jackson Heights.

```
 1              MR. SCHAFFER:  Just hypothetically in Jackson Heights
 2   or somewhere else that pays people off the books and doesn't
 3   record hours.  Koi records hours.  They have paperwork.
 4              I had some questions recording the paperwork, and I
 5   think there are ways for me to establish that they may have not
 6   given proper notice.  If I was left with that alone, I think I
 7   would have a potential uphill battle.  So a lot of it did hinge
 8   on can the sushi chefs be in the tip pool or not.
 9              THE COURT:  So you had substantial risk there.
10              MR. SCHAFFER:  I believe so, yes.
11              THE COURT:  Not to jump too much to your attorneys'
12   fees, but why is it such a good thing for the people who work
13   there that the sushi chef is now out of the tip pool?  Don't
14   people tip the sushi chef?  What's going to happen to those
15   tips now?
16              MR. SCHAFFER:  Well, the tips that were going to go to
17   the sushi chef in the tip pool are know going to people who
18   really, in my opinion, are entitled to tips such as servers,
19   bartenders, busboys, and people like that.  Because there was
20   5 percent that went to the sushi chefs --
21              THE COURT:  Just automatically?
22              MR. SCHAFFER:  Yes.
23              THE COURT:  So, in case I go to Koi and if I'm at the
24   sushi bar and I'm eating at the sushi bar and I tip the sushi
25   chef, that's not going to the sushi chef?
```

1  MR. SCHAFFER: It depends who you mean by you tipped
2  the sushi chef. If you left a tip on the check, currently
3  today it would not go to the sushi chef, any portion of it.
4  However, if you gave the sushi chef some amount of cash, I
5  believe they would keep it, but it wouldn't de facto go to a
6  sushi chef now.
7  THE COURT: So that's going to benefit your pool.
8  It's not going to benefit the sushi chef.
9  MR. SCHAFFER: Correct. The sushi chefs did receive
10 substantial pay over minimum wage anyway. I believe it was an
11 average of at least $15 an hour. They were already compensated
12 way over and above a server who was paid $5 an hour.
13 THE COURT: I've got this that the maximum recovery of
14 any individual, assuming that I approve your attorneys' fees,
15 approve the service awards, the maximum recovery is going to be
16 about $11,500. The average recover is about $1,200?
17 MR. SCHAFFER: Correct.
18 THE COURT: You're asking for $15,000 for each of the
19 two representatives.
20 MR. SCHAFFER: Yes.
21 THE COURT: Is that on top of their individual
22 recovery?
23 MR. SCHAFFER: Yes, your Honor.
24 THE COURT: What are their individual recoveries?
25 MR. SCHAFFER: I believe Jacqueline Silver is about --

1  I think she's the maximum.  She may be $10,000 or $11,000.  The
2  second person, Mr. Illoldi -- I believe he's in the $2,000 to
3  $3,000 range.  He worked much less than Ms. Silver.  Ms. Silver
4  was there almost the entire six-year period.
5              THE COURT:  So tell me why I should approve the
6  service awards.  They seem pretty substantial.
7              MR. SCHAFFER:  I believe other judges in this district
8  have recently approved service awards such as this.
9              THE COURT:  I'm sure of that.  We're all over the map.
10             MR. SCHAFFER:  I think it's very important and very
11 courageous, what they did.  I handle lots of these cases.  I
12 can tell your Honor that it's very rare for current employees,
13 especially in the restaurant industry, to come forward and say
14 there's a problem at the workplace.
15             A defendant such as this would probably not likely
16 retaliate against them.  However, in talking to tons of
17 plaintiffs, I can tell you that people think that they're going
18 to be retaliated against for standing up against management.
19             So these people took substantial risks.  They took a
20 risk of really being ostracized in the workplace.  They're both
21 current employees.  They're both still at Koi today.
22             I'll tell you, in my experience over the last couple
23 years, with the Internet and Google and search engines and the
24 technology developing, if anyone is in a lawsuit and it's filed
25 if federal court, you type the person's name into Google, and

1  within the first three search hits, they come up.

2           Employers aren't really able to say, I'm not going to
3  hire Ms. Silver because she was the lead plaintiff in a wage
4  case, but she may have a hard time getting a job in the future
5  in the restaurant industry.

6           No one will admit that it's because of this, but it
7  may very well be that this is a substantial factor in her not
8  getting employment in the future.

9           THE COURT:  Do we really think restaurants do that?

10          MR. SCHAFFER:  They absolutely do.  I know firsthand,
11 not this restaurant particular restaurant.  A friend of mine
12 was a worker at Nobu which settled a class action settlement
13 years ago.

14          He was only an opt-in plaintiff, but they're sometimes
15 still searchable by sites.  He interviewed at Balthazar, a very
16 good restaurant.  The person literally said to him, I saw you
17 were a plaintiff in this other case.  Sorry.  I'm not hiring
18 you.  So that has happened.

19          Again, it is a little speculative, but I can tell you
20 that the risk is real.  Really these people were instrumental
21 in us getting about 20 opt-ins without ever issuing an FLSA
22 notice which I think was important in me being able to convince
23 Mr. Fortuna and Ms. Lopez to engage us in mediation very early
24 on in the process.

25          The clients also were at mediation.  They were very

...

active, very engaged. They were talking to employees since the settlement. The response back has been very positive.

THE COURT: Except for the opt-outs.

MR. SCHAFFER: I don't think the opt-outs are necessarily unhappy. I know that's another issue.

THE COURT: I suspect Mr. Fortuna is unhappy.

MR. SCHAFFER: In terms of the opt-outs though, I can tell you that the way the settlement agreement was structured that the money that was allocated to the opt-outs will now be reallocated to everybody else. So that's about $16,000. So the average award that I just told you will go up a little bit.

THE COURT: But not much.

MR. SCHAFFER: Not much. $1,200 may become $1,300, something like that.

THE COURT: Now justify your attorneys' fees.

MR. SCHAFFER: I believe an attorney in the Second Circuit, your Honor, is for a percentage of the fund.

THE COURT: It is. I'm not saying this isn't a good settlement. I think, based on what you've said and what I've seen in the other case, this was a long-shot case. There were a lot of problems with it. So getting $1,000 or up to $10,000 for your class members is not an insubstantial amount.

But there was no real discovery in this case. There was no real litigation in this case. Again, I'm not suggesting you should be penalized for that. All and all that saves

GC7YIl1C                                                                9
Case 1:15-cv-06838-VEC Document 64 Filed 04/27/17 Page 9 of 12
Case 1:20-cv-00646-CFH Document 35-7 Filed 07/06/21 Page 10 of 13

1  everybody a lot of time and money.  Even assuming I take your
2  hours at face value, you're talking about more than three times
3  your loadstar.
4           MR. SCHAFFER:  So the multiplier is currently 2.95.
5           THE COURT:  I came up with 3.1.
6           MR. SCHAFFER:  This is just adding the hours in for
7  preparing for today's hearing.  So it's 2.95.
8           THE COURT:  You spent a lot of time preparing for this
9  hearing?
10          MR. SCHAFFER:  Yes.
11          THE COURT:  Then I should let you talk.
12          MR. SCHAFFER:  It was about five or six hours total.
13 The multiplier went down about .5 percent.  I think that range
14 of a 3 is well within the range approved by courts.  My firm
15 has gotten multipliers up to 7 in the last two years.
16          THE COURT:  Not from me.
17          MR. SCHAFFER:  Not from you, your Honor, but from
18 judges in this building.
19          THE COURT:  But they're softies.
20          MR. SCHAFFER:  I don't think they're softies.  I don't
21 think any judge in this building is a softy.  I think there's a
22 real risk in penalizing attorneys like my firm who really I
23 think get good results and really try to resolve cases without
24 spending lots of time and money.
25          Frankly, it benefits the class in general because a

1   restaurant like Koi may have had a budget like $900,000 to deal
2   with this case.  If they paid Mr. Fortuna another $200,000
3   litigating, if we took depositions and motion practice, then
4   maybe Mr. Fortuna would have only been willing to settle for
5   $600,000 a year from now.
6          So really I think my firm tries to be efficient in
7   every case.  We reach out very early on in the process.  This
8   case was mediated with Ruth Raisfeld.  She's handled lots of
9   these as a class of collective basis.  She's well respected.
10  She was very active.  It was an all-day mediation.  It was
11  certainly an arm's length transaction.
12         THE COURT:  I don't have any doubt about that.  I
13  don't have any question that it's an arm's length settlement.
14  Based on what you've told me about the risks in the case, I
15  don't have any issue about the fairness of that.
16         I don't have any question about the fairness of the
17  amount that the class is getting.  The issue is whether a third
18  of that is a reasonable fee under the circumstances.
19         MR. SCHAFFER:  It's also within public policy.  My
20  firm operates on a 100 percent contingency.  As of about two
21  years ago, we don't take any hourly matters.  I can tell you
22  that running a contingency practice -- we now have about 8
23  attorneys and 13 full-time employees.  It's very difficult.
24         We have to have lines of credit and things like that.
25  We never know if any case is going to pay.  We could have spent

1  a lot of time and money here and gotten zero.

2              In my affidavit and my declaration, I tried to
3  highlight a couple real horror stories, a couple of
4  bankruptcies that have happened after putting in lots of work.
5  One just happened about two weeks ago with Judge Failla where
6  the restaurant was called Artisanal.  It's a very nice French
7  restaurant on 31st and Park Avenue in midtown.

8              THE COURT:  It went into bankruptcy?

9              MR. SCHAFFER:  Yes.  It went into bankruptcy after we
10  reached a settlement for $150,000.  Now I'm in a position where
11  I have to chase the individual who, long story.  We may not
12  recover anything in this case.  That's after reaching a
13  settlement.

14              Other bankruptcies, one was called Mama Mexico.  Two
15  huge successful Mexican restaurants went bankrupt.  It was
16  default.  It was a trial in front of Judge Fox.  A 5,000,000
17  judgment.  No one has collected a penny.

18              So there have been lots of cases where my firm and
19  other firms have spent lots of resources due to things out of
20  our complete control.  I know there are some lawyers that file
21  some non-meritorious cases in this district, maybe some cases
22  that are worth very little money.

23              I know it's flooding the docket, and I know it's
24  really clouding the opinions of some of the judges.  My firm
25  tries not to do that.  I think we're very well regarded by

Case 1:15-cv-00838-VEC Document 64 Filed 04/27/17 Page 12 of 12

```
 1  opposing counsel and other judges.  We're very selective.
 2          We still, even given that selectivity -- would I know
 3  that Artisanal would go bankrupt?  These are things that we
 4  can't account for but do happen.  So to say it isn't fair to
 5  get a 3 multiplier, given the totality of the circumstances, I
 6  like to think that we earn the fee, and I think the result is
 7  very good for everyone, and I request that your Honor approve
 8  the fee.
 9          THE COURT:  I am going to approve it.  I think it's a
10  little on the high side, but I take your point that that's the
11  life of a contingent lawyer.  Sometimes you're on the high
12  side; sometimes you're on the low side.
13          It is within the realm of what the courts approve.  So
14  I'm going to sign off on the settlement.  I think you've given
15  us a form of order.  We'll get that out, if not today,
16  Wednesday.
17          Anything further?
18          MR. SCHAFFER:  Nothing further.
19          THE COURT:  Anything further?
20          MR. FORTUNA:  Nothing further.
21          THE COURT:  Thank you.
22          (Adjourned)
23
24
25
```